IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

PETE GODFREY D/B/A
SPIDER CREEK RESORT, INC.                                                                    PLAINTIFF

v.                                    Case No. 3:11-CV-03007

UNITED STATES OF AMERICA and
UNITED STATES ARMY CORPS OF ENGINEERS                                          DEFENDANTS

**MEMORANDUM OPINION AND ORDER**

Currently before the Court are Defendants United States of America and United States Army Corps of Engineers' ("the USACE") Motion to Dismiss or in the Alternative for Summary Judgment (Doc. 7) and Brief in Support (Doc. 8), Plaintiff's Response (Doc. 11), and Defendants' Reply (Doc. 13). For the reasons stated herein, Defendants' Motion to Dismiss or in the Alternative for Summary Judgment (Doc. 7) is **GRANTED**.

**I. Background and Procedural History**

Plaintiff alleges that he sustained property damage totaling $175,644.28 because of negligent acts committed by the USACE. According to Plaintiff's Complaint, during the winter months of 2007 and 2008, the USACE abandoned its longtime practice of periodically reducing the lake levels on Beaver Lake through controlled discharges of water through Beaver Dam. When heavy rains came in late winter/early spring of 2008, lake levels became dangerously high, and according to Plaintiff, the USACE "engaged in unprecedented discharge" of water from the dam area into the lake on or about April 10, 2008. (Doc. 1, p. 3). This discharge of water allegedly resulted in flood damage and destruction to Plaintiff's property, which lies on the banks of the White River below Beaver Dam in Carroll County, Arkansas.

Plaintiff made an administrative claim for damages on September 7, 2008, and that claim was denied on July 26, 2010. (Doc. 1). [1]

Plaintiff contends that the USACE "departed from their established practice for releasing water" so that the government could generate more hydroelectric power from Beaver Dam. *Id.* at p. 4. Plaintiff argues that the USACE's decisions regarding the controlled release of water from the dam were motivated by the commercial purpose of generating power, not, as the USACE contends, the purpose of flood control. Plaintiff further contends that since Beaver Dam is a "multi-purpose project" that generates power, provides flood control for the area, and is also used for recreational purposes, the Dam is not a "clear flood control project." (Doc. 11). Therefore, Plaintiff argues, the actions of the USACE and resulting damage to Plaintiff's property should not be shielded by the sovereign immunity conferred by the Flood Control Act of 1928, 33 U.S.C. § 702 (c).

The USACE disagrees with Plaintiff and maintains that the Flood Control Act's sovereign immunity provision applies to the case at bar because Plaintiff's alleged damage was caused by the government's efforts to regulate flood waters. The USACE's Motion was supported by the Declaration of Phil Gibson Combs (Doc. 7-2), who is a former hydraulic engineer with the USACE Coastal and Hydraulic Laboratory. Dr. Combs reviewed rainfall data in the Arkansas White River Basin and determined that the rainfall in March and April of 2008 was so excessive that there were daily decisions made by the USACE as to evacuating the excess runoff water to control flooding at Beaver Dam, as well as the consequences of downstream flooding. It was Dr. Combs' opinion that

---

[1] For purposes of evaluating Defendants' Motion (Doc. 7), the Court will assume that Plaintiff's administrative claim for damages was appropriately made pursuant to the requirements of the Federal Tort Claims Act ("FTCA") found at 28 U.S.C. § 2675 (a).

the water control managers at the USACE adhered to the water control plan for Beaver Dam and made sound engineering judgments regarding releasing flood water at the dam site.

The USACE's Motion was also supported by the Declaration of Michael Biggs, Chief of Reservoir Control for the USACE Little Rock District (Doc. 7-4). Mr. Biggs' Declaration included a copy of the White River Water Control Plan, which describes in great detail the process by which flood waters are regulated by means of the lakes, rivers, and dams at Beaver, Table Rock, Bull Shoals, and Norfolk Lakes in Arkansas. *Id.* at pp. 27-34. Mr. Biggs stated:

> "From April 1 to April 10, 2008, the date of Plaintiff's flooding, 5.6 inches of rain fell in the Beaver Lake basin. The highest rainfall amount for April 1 - 10 during the years 1998 to 2007 was 4.33 inches in 2002. March 1, 2008 to April 10, 2008 was the wettest ever recorded at 24 reporting stations in Arkansas. . . In fact the White River remained above flood stage at Newport, Arkansas from March 19, 2008 through April 21, 2008, with the exception of one 23 hour period. The river remained above flood stage downstream at Georgetown, Arkansas from March 11, 2008 until May 12, 2008. Several towns and cities downstream from the White River lakes experienced significant flooding. Because of the high rainfall amounts, non power-related water releases were made from Beaver Dam on 19 days between the dates March 1, 2008 and April 10, 2008."

*Id.* at pp. 5-6.

**II. Legal Standard**

The Court shall treat Defendants' Motion as one for summary judgment. In determining whether summary judgment is appropriate, the burden is placed on the moving party to establish both the absence of a genuine dispute of material fact and that it is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986); *Nat'l Bank of Commerce of El Dorado, Ark. v. Dow Chem. Co.*, 165 F.3d 602 (8th Cir. 1999). The Court must review the facts in a light most favorable to the party opposing a motion for summary judgment and give that party the benefit of any inferences that logically can be drawn from

those facts. *Canada v. Union Elec. Co.*, 135 F.3d 1211, 1212-13 (8th Cir. 1998).  In order for there to be a genuine issue of material fact, the non-moving party must produce evidence "such that a reasonable jury could return a verdict for the nonmoving party." *Allison v. Flexway Trucking, Inc.*, 28 F.3d 64, 66 (8th Cir. 1994) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

It is well-established that the United States as sovereign is immune from suit except in the manner and degree sovereign immunity is waived.  *FDIC v. Meyer*, 510 U.S. 471, 475 (1994).  One such example of sovereign immunity is codified in the Flood Control Act of 1928, wherein Congress provided that "[n]o liability of any kind shall attach to or rest upon the United States for any damage from or by floods or flood waters at any place."  33 U.S.C. § 702 (c).  The sovereign immunity conferred by the Flood Control Act "bars recovery where the Federal Government would otherwise be liable under the Federal Tort Claims Act . . ." *United States v. James*, 478 U.S. 597, 599 (1986).  "It is well-settled that the later passage of the FTCA in 1946 did not repeal by implication the immunity granted under § 702c." *Lunsford v. United States*, 570 F.2d 221, 228 (8th Cir. 1977).

 **III. Discussion**

The key issue in this case is whether Plaintiff's alleged damages were caused by "floods or flood waters" as those terms appear in the Flood Control Act of 1928, 33 U.S.C. § 702 (c).  If so, then sovereign immunity will bar Plaintiff from recovering against Defendants.

The Supreme Court held in *Central Green Co. v. United States*, 531 U.S. 425, 434 (2001) that it is "the character of the waters that cause the relevant damage," not "the character of the federal project or the purposes it serves" that determines whether sovereign immunity applies under the Flood Control Act.   In *Central Green*, property owners brought suit against the United States, pursuant to the FTCA, alleging damage caused by water flooding from a federally owned canal.

-4-

Even though the canal was part of a government project that had flood control as one of its congressionally authorized purposes, the waters that caused the alleged damage in question were not necessarily flood waters. The damage in *Central Green* was "caused by continuous or repeated flows occurring over a period of years, rather than by a single, discrete incident." *Id.* at 436. The Court then reasoned that "[i]t is relatively easy to determine that a particular release of water that has reached flood stage is 'flood water,' as in [*United States v. James*, 478 U.S. 597 (1986)], or that a release directed by a power company for the commercial purpose of generating electricity is not as in *Henderson v. United States*, 965 F.2d 1488 (8th Cir. 1992)."

Turning to the facts in the instant case and using the Supreme Court's guidance in *Central Green*, it appears that the nature of the damage alleged by Plaintiff was unquestionably caused by flooding during a single, discrete incident in the spring of 2008, when water reached flood stage in the Beaver Dam area after a period of heavy rainfall. The release of water that damaged Plaintiff's property was not a release directed by the USACE for the commercial purpose of generating electricity. Moreover, the fact that Beaver Lake and Dam's water supply is used at times for multiple purposes does not affect the Court's analysis here. Flooding caused Plaintiff's injury, and the United States is immune from suit for flood damage.

The Eighth Circuit has also provided guidance on the interpretation of the Flood Control Act in cases involving potential FTCA liability. In *National Mfg. Co. v. U.S.*, 210 F.2d 263, 271 (8th Cir. 1954), the Court interpreted the Flood Control Act's language to mean "that the bar against federal liability for damages is made to apply wherever floods or flood waters have been substantial and material factors in destroying or damaging property." The legislative history of the Act makes evident that Congress anticipated "that it will be claimed after the happening of floods that

negligence of government employees was a proximate cause of damages where floods or flood waters have destroyed or damaged goods." *Id.* Indeed, Plaintiff in the case at bar lodged his claim after his property was damaged by flood waters, allegedly "due to the direct negligence of the United States Army Corps of Engineers . . . based on a failure to properly maintain water levels through proper discharge of water at the Beaver Lake and Dam . . . ." (Doc. 1, p. 1).

The reports of Dr. Combs and Mr. Biggs submitted by the USACE confirm that the discharge of water from Beaver Dam into Beaver Lake on or about April 10, 2008, was the direct result of flooding and flood control measures taken by the USACE. Both supporting declarations confirm that any damage suffered by Plaintiff on or about the date in question was not caused by water that was in the process of being used for generating hydroelectric power; instead, the damage was caused by water released in a calculated manner by the USACE to prevent Beaver Dam from overflowing and to reduce the impact of flooding in the White River Basin. Plaintiff does not counter the expert reports of Defendants with any evidence to the contrary. In fact, Plaintiff appears to concur that flooding caused his damage. He describes in his Complaint "[a] failure of USACE to reduce the lake levels during the winter months" as directly resulting in "the destruction and damage to Plaintiff's property." (Doc. 1, p. 2). Reducing the lake levels is obviously a method of flood control exercised by the USACE. Furthermore, Plaintiff observes that "USACE engaged in unprecedented discharge levels after heavy rains in and around the Beaver Lake and Dam watershed." (Doc. 1, p. 3). Again, this "discharge" described by Plaintiff in response to "heavy rains" can only be seen as a purposeful act undertaken by the USACE to control flood waters.

Because Plaintiff's alleged injury and resulting damages were caused by "floods or flood waters" as those terms appear in the Flood Control Act of 1928, 33 U.S.C. § 702 (c), sovereign

immunity bars Plaintiff from recovering under the FTCA against Defendants. Accordingly, Defendants are immune from suit, and the Court lacks jurisdiction over them. Plaintiff's Complaint must therefore be dismissed with prejudice on summary judgment, as there exists no genuine issue of material fact as to the nature of the flood waters that caused Plaintiff's claim for damages against Defendants. As the Court has determined that dismissal of Plaintiffs claims is appropriate on these grounds, it will not address Defendants' alternative arguments for dismissal.

**IV. Conclusion**

For the foregoing reasons, **IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss or in the Alternative for Summary Judgment (Doc. 7) is **GRANTED**. This case is dismissed with prejudice, with the parties ordered to bear their own costs and fees. Final judgment shall be entered contemporaneously herewith.

IT IS SO ORDERED this 9th day of February, 2012.

*/s/ P. K. Holmes,* III
P.K. HOLMES, III
UNITED STATES DISTRICT JUDGE